UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § §§§ |
| VS | § |
| P.D. DRILLING HOLDINGS, INC.<br>(Incorporated under the laws of Barbados) | § CRIMINAL NO.<br>§<br>§ **13CR 736** |

### PLEA AGREEMENT

The United States of America, by and through, Kenneth Magidson, United States Attorney for the Southern District of Texas, and S. Mark McIntyre, Assistant United States Attorney, and defendant, P.D. Drilling Holdings, Inc., and defendant's counsel pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### TERMS OF THE AGREEMENT

1. The defendant agrees to give up the right to be indicted by a grand jury and agrees to plead guilty to Count One of the Criminal Information (hereinafter "Information") in this case and to persist with that plea.

    a. The defendant agrees that this Agreement will be executed by an authorized representative. Defendant further agrees that a Resolution duly adopted by the Board of Directors of P.D. Drilling Holdings, Inc., attached to this Agreement as Exhibit 1, represents that the signatures on this Agreement by P.D. Drilling Holdings, Inc. are authorized by P.D. Drilling Holdings, Inc.'s Board of Directors.

    b. The defendant further agrees to pay to the United States a criminal fine in the amount of $1,000,000.00. Consistent with other Agreements entered into on this day, defendant agrees to wire transfer to the United States $1,000,000.00 within thirty days following

1

arraignment pursuant to payment instructions as directed by the United States in its sole discretion.

      c.      The defendant agrees to institute a compliance program designed to provide reasonable assurances that no further violations of United States export and trade sanctions law will occur. The United States agrees that the defendant's obligation to implement such a compliance program is satisfied by the defendant's agreement that the compliance program implemented by its parent company, Weatherford International Ltd., as described in the compliance presentation made to the United States in November 2009, will be applicable to the defendant.

      d.      The defendant agrees to fully cooperate with federal law enforcement and the United States Attorney's Office and to provide all non-privileged information relating to the offenses charged in the information in this case if requested to do so.

      2.      Count One, in pertinent part, charges the defendant with violating the Trading with the Enemy Act (Title 50, United States Code Appendix, Section 5 and 16).

      3.      In exchange for the defendant's plea of guilty to the Criminal Information in this case as well as the defendant's agreements outlined in paragraph one of this written Agreement, the United States agrees to recommend the Court impose a fine of $1,000,000.00.

      4.      Under 18, United States Code, Section 3561, the penalty for a violation of Title 50, United States Code Appendix, Sections 5 and 16 may include a possible period of probation from one year to five years. But pursuant to this Agreement, the parties expressly agree that a term of probation for the defendant is neither in the public interest or otherwise warranted in this case.

5. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States agrees that the specific terms of this Agreement outlines the appropriate disposition of this case. This recommendation will bind the Court once the Court accepts this Agreement. The defendant understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement, and either party may withdraw from this Agreement in that event.

## PENALTY

6. The penalty for a violation of Title 50, United States Code Appendix, Sections 5 and 16 includes a possible period of probation from one year to five years, a fine of up to $1,000,000.00 or twice the gross gain or loss resulting from the offense, and a $400 Mandatory Special Assessment per count of conviction. Title 18, United States Code, Sections 3551(c), 3561, 3571(d), and 3013(a)(2)(B).

   a. The defendant hereby stipulates and agrees not to institute or participate in any proceeding to interfere with, alter, or bar enforcement of any fine, penalty, special assessment or forfeiture order pursuant to the automatic stay or other provision of the United States Bankruptcy Code.

   b. The defendant agrees that nothing in this Agreement is intended to release the defendant from any and all of the defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

## WAIVERS

7. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Should the Court impose the sentence

proposed herein, the defendant agrees that it will waive the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

8. The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford the defendant the right to contest or "collaterally attack" its conviction or sentence after the conviction has become final. Knowing that, the defendant knowingly waives the right to contest or "collaterally attack" the defendant's plea, conviction and sentence by means of any post-conviction proceeding.

9. Defendant waives all defenses to the conduct charged in the Information based on venue, speedy trial under the United States Constitution and Speedy Trial Act, and the running of the statute of limitations, from January 1, 2011 to the time when any of the following events is determined by a court to occur: (a) defendant's conviction is later vacated for any reason, (b) defendant violates any provision of this Agreement, or (c) defendant's plea is later withdrawn. Further the defendant waives any and all constitutional and non-jurisdictional defects.

10. This Agreement binds only the United States Attorney's Office for the Southern District of Texas and the defendant; it does not bind any other governmental agency. The only parties to this Agreement are the United States Attorney for the Southern District of Texas and P.D. Drilling Holdings, Inc. Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents. Nothing in this agreement shall be construed as an acknowledgement by Weatherford that the Agreement, including the Factual Statement, is admissible or may be used in any proceeding other than in a proceeding brought by this Office.

## RIGHTS AT TRIAL

11. The defendant represents to the Court that defendant is satisfied that the defendant's attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, the defendant surrenders certain rights as provided in this Agreement. Defendant understands that the rights of defendants include the following:

    a. If the defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the defendant, the United States, and the Court all agree.

    b. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on its own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

12. The defendant understands that nothing in this Agreement will restrict access by the United States Probation Office or the Court to information and records in the possession of the United States or any of its investigative law enforcement agencies, including State and local law enforcement agencies, as well as information, documents and records obtained from the defendant.

## BREACH OF THE PLEA AGREEMENT

13. If the defendant should fail in any way to fulfill completely all of the obligations under this Agreement, the United States will be released from its obligations under the Agreement.

14. It is understood by the defendant and the United States that should the defendant fail to comply with any of the obligations set forth in this Agreement or violate any of the terms or conditions set forth in this agreement, or engages in any criminal violation of the Trading with the Enemy Act, 50 U.S.C. app. §§ 5 and 16 through sentencing, the United States shall be released from its obligations under this Agreement, yet the defendant's plea and sentence will stand and the Southern District of Texas may institute or re-institute prosecution including but not limited to enhancement of the sentence and may prosecute the defendant for any and all violations of Federal law which the defendant may have committed. For purposes of this paragraph, the defendant waives any statute of limitations that may apply to any such Federal offenses or counts. Whether the defendant has breached any provision of this plea agreement shall be determined by the United States.

## FACTUAL BASIS

15. Should the defendant proceed to trial, the following facts among others would be proven beyond a reasonable doubt:

16. Weatherford International Ltd. ("Weatherford") is an oil and gas service company headquartered in Geneva, Switzerland.

17. P.D. Drilling Holdings, Inc. is a Barbados corporation headquartered in St. Michael, Barbados.

18. In August 2005, Weatherford subsidiaries purchased the Energy Services Division and International Contract Drilling Division of Precision Drilling Corporation, a Canadian entity headquartered and located in Canada. At the time of the Weatherford subsidiaries' acquisition of Precision a U.S. embargo of Cuba was and remains in effect.

19. As part of the Precision acquisition, Weatherford PES/PDG Ltd., a subsidiary of Weatherford, acquired Precision Energy Services, Ltd. ("PESL"). PESL and its predecessor companies had conducted business in Cuba for approximately ten years at the time of the acquisition. PESL had support services that were physically located in Cuba. After the acquisition, PESL maintained the Cuba business and expanded on it with a new contract until September 2007.

20. Prior to Precision's acquisition and since, Weatherford has maintained on the internet and on its own intranet guidance regarding U.S. export control compliance, sanctions compliance, to include Cuba, and a U.S. sanctions compliance checklist specific to Cuba. This guidance was viewable by P.D. Drilling Holdings Inc. personnel.

21. In December 2005, Precision's Cuban business was moved to another subsidiary of Weatherford, Precision Energy Services Colombia ("PESC"). PESC did business in Colombia and the Cuba business was operated by persons located in Canada and an Operations Manager that rotated between Canada and Cuba. The stock of PESC was sold to P.D. Drilling Holdings, Inc. As part of the transfer, Weatherford replaced the directors and officers of PESC and P.D. Drilling Holdings, Inc. with non-U.S. persons.

22. Certain functional and operational decisions affecting Cuban business were approved and decided on by Product Line Managers located in the U.S. Weatherford Human Resources, located in the U.S., provided support for PESC employees operating in Cuba.

23. Prior to its acquisition by Weatherford, PESL sent goods directly to Cuba from Canada even when it involved U.S. goods. Canada had enacted a law that prohibited Canadians from complying with U.S. laws enforcing the embargo of Cuba. Regardless of the Canadian law, it is a violation of U.S. law for Canadians to export U.S. goods to Cuba.

24. Post acquisition, beginning in May 2006, PESC changed its practices in regards to supporting business in Cuba. The new practice of sending goods and supporting business in Cuba was developed by a manager of P.D. Drilling Holdings, Inc., a manager of PESC, and others. The new practice involved the use of false shipping documents to conceal the shipment of U.S. origin goods to Cuba. Under the new practice, a PESC employee located in Cuba prepared a request for goods and submitted it to a separate subsidiary. The separate subsidiary in turn would forward the request to Weatherford Canada Partnership. The request would state that the goods be shipped to Barcelona, Venezuela using a specific shipping company located in Canada. When Weatherford Canada Partnership received a request from the separate subsidiary that specified a delivery to Barcelona, Venezuela, employees within Weatherford Canada Partnership knew to refer the order to a specific PESC employee. Weatherford Canada Partnership would fill the order and have the goods shipped to the specific Canadian shipping company. When the Canadian shipping company received the goods, the specific PESC employee would then arrange to have the goods directly exported to Cuba. A functional location for Barcelona was created in the computer system, falsely reflecting an end destination in Barcelona, Venezuela. Within Weatherford, Cuba was often referred to as "Barcelona" or "Caribbean" in conversation and correspondence. Orders made by PESC contained goods of U.S. origin and were subject to the U.S. embargo of Cuba.

25. Some of the U.S. goods exported to Cuba by PESC in the manner outlined above included essential oil and gas equipment such as mud motors, MWD orientation modules, drill collars and stabilizers, and batteries. In addition, about 20 to 30 percent of consumables, such as gloves and cleaning solvents, exported to Cuba were of U.S. origin.

26. The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, had responsibility for administering the Cuban Asset Control Regulations, and was the entity empowered to authorize transactions with Cuba during the embargo. Such authorization, if granted, would be in the form of a license. Neither P.D. Drilling Holdings, Inc. nor PESC obtained such a license.

27. This written Agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this Agreement. The defendant acknowledges that no threats have been made against the defendant and that the defendant is pleading guilty freely and voluntarily because the defendant is guilty. Any modification of this Agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

Executed on this the 25 day of NOVEMBER, 2013.

_____
Alejandro Cestero
Authorized Representative for
P.D. Drilling Holdings, Inc.

*[signature]*
F. Joseph Warin
Michael J. Edney
GIBSON, DUNN & CRUTCHER LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
Counsel for the Defendant

Signed by Michael J. Edney with Approval of the Board of Directors (Exhibit 1)

SUBSCRIBED AND SWORN TO BEFORE ME on this the 17th day of Jan, ~~2013~~ 2014

DAVID BRADLEY, Clerk

By: *[signature]* Rhonda Konecny
Deputy Clerk

10

APPROVED:
KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
S. MARK MCINTYRE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| VS | § |
| P.D. DRILLING HOLDINGS, INC. (Incorporated under the laws of Barbados) | § CRIMINAL NO. § § **13CR 736** |

I, Michael J. Edney, have explained to the Defendant P.D. Drilling Holdings, Inc. its rights with respect to the pending Information. I have informed the Defendant that the Sentencing Guidelines and Policy Statement have been deemed as "advisory" to the court pursuant to Booker. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements and I have fully explained to the Defendant the provisions of those guidelines which may apply in the case. I have carefully reviewed every part of the Agreement with the Defendant. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____         November 26, 2013
F. Joseph Warin                       Date
Michael J. Edney
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 966-8500
Counsel for the Defendant,
P.D. Drilling Holdings, Inc.

12

## P.D. DRILLING HOLDINGS INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS
### IN LIEU OF A SPECIAL MEETING

January 16, 2014

The undersigned, being all the directors of P.D. Drilling Holdings Inc., a Barbados company (the "Company"), in lieu of a special meeting of the Board of Directors (the "Board"), the call and notice of which are hereby expressly waived, do hereby consent to the adoption of and adopt the following resolutions:

WHEREAS, the Board has been informed by its counsel of a proposed settlement with the United States Department of Justice ("DOJ") in relation to certain matters which have been under investigation by DOJ (the "Proposed Settlement");

NOW, THEREFORE, the Board has resolved as follows:

RESOLVED, that Alejandro Cestero, President of the Company and Vice President, Co-General Counsel and Corporate Secretary of the Company's parent corporation, Weatherford International Ltd., a Swiss joint stock company, is authorized and directed to execute and deliver the Plea Agreement on behalf of the Company and such other documents as are necessary to effect the Proposed Settlement, and to take such other and further actions as may be approved by the Board of Directors of the Company or any authorized committee or subcommittee thereof, as applicable, to consummate the Proposed Settlement and the resolution of the investigation of past payments and practices referenced above, including appearing before the United States District Court for the Southern District of Texas, Houston Division, to enter a plea of guilty on behalf of the Company and accept the sentence of the Court;

FURTHER RESOLVED, that in the confirmed absence in writing of the aforementioned Officer, that any other executive officer of the Company is hereby authorized and directed, for and on behalf of the Company, to do or cause to be done all other things and acts, to execute, sign, deliver, file and perform or cause to be executed, signed, delivered, filed and performed all instruments, documents and certificates as may be, in their sole judgment, necessary, proper or advisable in order to implement or effect the actions described above and the intent of the foregoing resolutions and otherwise to carry out and comply with the purposes and intent of the foregoing resolution;

FURTHER RESOLVED, that all actions, preparation, execution, deliveries and filings of all agreements, instruments, documents and certificates in the name of and on behalf of the Company, and each and every action taken by and all fees and expenses incurred or paid by any director or officer of the Company having been deemed necessary, proper or advisable to carry out the intent and effectuate the purposes of the foregoing resolutions prior to the date hereof, which would have been authorized by the foregoing resolutions but for the fact that such actions were taken prior to such date, are hereby authorized, approved, adopted, consented to, voted for, confirmed and ratified in all respects; and

65291

1

*Exhibit 1 to Plea Agreement*

FURTHER RESOLVED, that this unanimous written consent may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one instrument. A copy of this written consent that is signed and delivered by email, telecopy or other facsimile transmission shall be considered an original, executed consent.

**DIRECTORS**

*[signature]*

Printed Name: Liza A. Harridyal-Sodha

*[signature]*

Printed Name: Oscar Pinotti